UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

# 99 - 00491 CR - KING

CASE No.

18 USC 371
18 USC 1001
18 USC 32            MAGISTRATE JUDGE
18 USC 2                O'SULLIVAN
18 USC 2
49 USC 5124
49 USC 46312

UNITED STATES OF AMERICA

v.

SABRETECH, INC.
DANIEL GONZALEZ
EUGENE FLORENCE and
MAURO VALENZUELA _____/

## INDICTMENT

The Grand Jury charges that:

## COUNT I

1.  Beginning in or about July, 1995 and continuing until in or about May, 1996, at Miami-

Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**SABRETECH, INC.,**
**DANIEL GONZALEZ,**
**EUGENE FLORENCE, and**
**MAURO VALENZUELA,**

did knowingly, willfully and unlawfully combine, conspire, confederate and agree, with each other

and with other persons known and unknown to the Grand Jury, to commit offenses against the United

States, that is, knowingly and willfully to make and cause to be made materially false and fraudulent

statements and representations in matters within the jurisdiction of the United States, in violation of

Title 18, United States Code, Section 1001.

## BACKGROUND

At times material to this indictment:

### *Federal Regulation of Civil Aviation*

2. The United States Congress enacted laws to promote the safety of flight of civil aircraft in air commerce and to create rules, regulations, and minimum standards in the interest of safety. Congress empowered and directed the Secretary of Transportation to carry out those duties.

3. The United States Department of Transportation was a department of the United States. Among its duties and responsibilities was oversight for and regulation of the transportation of hazardous materials, as more particularly described at Paragraphs 29 - 32 below, which paragraphs are incorporated by reference herein. This oversight and regulation included prescribing and enforcing standards for the documentation and records of transportation of hazardous materials. The content and accuracy of such documentation and records were within the jurisdiction of the Department of Transportation.

4. The Federal Aviation Administration (hereafter "FAA") was an agency of the United States, within the Department of Transportation, whose mission was to promote safe flight of civil aircraft in air commerce, including by prescribing and enforcing minimum safety standards for and oversight of enterprises and individuals engaged in the business of repairing and maintaining commercial aircraft. In fulfilment of this mission, and pursuant to federal aviation regulations, the FAA issued repair station certificates to qualifying business entities, and mechanic certificates with

-2-

airframe and powerplant rating (commonly called an "A&P certificate" or "A&P license") to qualifying individuals. Certificated domestic repair stations were required to maintain adequate records of their work, naming the certificated mechanic or repairperson who performed or supervised the work. In further fulfilment of its mission, the FAA had among its rights and duties the inspection of repair stations, and repair station records, to assess and determine repair station compliance with standards for aircraft maintenance and repair operations. The content and accuracy of these records were within the jurisdiction of the FAA.

*Corporate Entities*

5.   Sabreliner Corporation was in the business of aircraft repair and maintenance. It was incorporated in Delaware and had headquarters in St. Louis, Missouri.

6.   On or about June 30, 1995, Sabreliner Corporation bought the outstanding shares of capital stock of DynAir Tech of Texas, Inc.; DynAir Tech of Florida, Inc.; and DynAir Avionics, Inc. Immediately prior to this purchase, DynAir Tech of Arizona, Inc. merged with and into DynAir Tech of Florida, Inc., which assumed the liabilities and obligations of DynAir Tech of Arizona, Inc. From June 30, 1995, on, DynAir Tech of Florida, Inc. was a wholly owned subsidiary of Sabreliner Corporation.

7.   DynAir Tech of Florida, Inc., which was incorporated in Florida, operated an aircraft repair station at 4900 N.W. 36th Street, Building 25, in Miami-Dade County, and held FAA domestic repair station certificate number RD3R811L.

8.   In or about January, 1996, Sabreliner Corporation caused **SabreTech, Inc.** to be incorporated in Delaware, and caused **SabreTech, Inc.** to acquire all the common stock of DynAir

-3-

Tech of Florida, Inc.; DynAir Tech of Texas, Inc; and DynAir Avionics. **SabreTech, Inc.** was a wholly owned subsidiary of Sabreliner Corporation.

9. In or about January, 1996, **SabreTech, Inc.** merged into itself DynAir Tech of Florida, Inc.; DynAir Tech of Texas, Inc; and DynAir Avionics and assumed all of their liabilities and obligations. The business and repair-station certification of DynAir Tech of Florida, Inc.'s Miami-Dade County repair station continued under the name of, and as, **SabreTech, Inc.** DynAir Tech of Florida, Inc. was essentially the same business operation as **SabreTech, Inc.**, with virtually identical officers and directors, and with continuity of business activity, repair station certificate number, obligations and operations. The continual business which operated from June 30, 1995 under the name DynAir Tech of Florida, Inc., and from January 1996 onward under the name of **SabreTech, Inc.** shall be referred to in total hereafter in this indictment as "SabreTech".

10. Among SabreTech's customers were ValuJet Airlines, Inc. and Aserca Airlines, Inc. SabreTech engaged much of its personnel on a contract basis, obtaining the services of personnel including A&P-licensed mechanics from aviation services providers including Piping Design Services, Inc. (hereafter "PDS") and STS Services, Inc. (hereafter "STS"). The A&P-licensed mechanics who worked at SabreTech pursuant to such service contracts were under the supervision and control of SabreTech, and there was a master-servant relationship between SabreTech and these personnel.

*Individuals*

11. The defendant **DANIEL GONZALEZ** was in charge of Maintenance at SabreTech's Miami repair station, with duties including oversight for the quality and pace of SabreTech's aircraft maintenance and repair work. His title was variously held out as Assistant Vice President of

-4-

Maintenance, Vice President of Maintenance, and Director of Maintenance.

12.  The defendant **EUGENE FLORENCE** was a licensed A&P mechanic and worked in that capacity at SabreTech at various times during 1995 and 1996. He worked for SabreTech pursuant to SabreTech's arrangement with PDS. He worked on behalf of SabreTech and pursuant to SabreTech's control and supervision, and  there was a  master-servant relationship between SabreTech and the defendant **EUGENE FLORENCE.**

13.  The defendant **MAURO VALENZUELA** was a licensed A&P mechanic and worked in that capacity at SabreTech at various times during 1996.  He worked for SabreTech pursuant to SabreTech's arrangement with STS. He worked on behalf of SabreTech and pursuant to SabreTech's control and supervision, and there was a master-servant relationship between SabreTech and the defendant **MAURO VALENZUELA.**

### OBJECT OF THE CONSPIRACY

14.  It was the object of the conspiracy to place the short-term business and pecuniary interests of **SabreTech, Inc.**, ahead of other concerns, including safety concerns, in the conduct of **SabreTech, Inc.**'s activity as an aircraft repair station.

### MANNER AND MEANS OF THE CONSPIRACY

15.  It was part of the manner and means of the conspiracy that **Daniel Gonzalez** would and did oversee SabreTech's maintenance and repair work, including its documentation, so as to rush and compress it, even if this meant skipping prescribed worksteps and falsely asserting that the work had been done.

16.  It was further part of the manner and means of the conspiracy that SabreTech workers,

including employees and contract personnel, would and did bow to SabreTech's managerial and supervisory pressure to certify the performance and completion of work prematurely and otherwise irregularly, a practice known as "pencil-whipping".

17.   It was further part of the manner and means of the conspiracy that **SabreTech, Inc.** performed the task of removing from ValuJet aircraft N802VV and N803VV and handling out-of-date oxygen generators with grossly inadequate regard for their hazardous nature, and that SabreTech-controlled mechanics misleadingly signed off on work cards indicating that prescribed safety measures had been followed, such as the installation of shipping caps that could have prevented the oxygen generators from initiating an exothermic (heat-generating) chemical reaction, when in fact the shipping caps had not been installed.

### Overt Acts

18.   To carry out and effectuate the goals of the conspiracy, one or more of the co-conspirators committed, in the Southern District of Florida, and elsewhere, one or more of the following overt acts:

A.   In or about December, 1995, **Daniel Gonzalez** signed off as mechanic on Work Card No. R-45904 for Aserca Airlines aircraft YV720C.

B.   In or about April, 1996, **Mauro Valenzuela** signed off as mechanic on Work Card No. 0069 for ValuJet Airlines aircraft N803VV.

C.   On or about April 26, 1996, **SabreTech, Inc.,** through **Mauro Valenzuela** and others, stated on a non-routine work card for work order 730H-06-W253 for ValuJet Airlines aircraft N803VV that all cabin oxygen generators had been removed and replaced  per ValuJet card 0069.

D.  In or about May, 1996, **Eugene Florence** signed off as mechanic on Work Card No. 0069 for ValuJet Airlines aircraft N802VV.

E.  On or about May 4, 1996, **SabreTech, Inc.,** through **Eugene Florence** and others, stated on a non-routine work card for work order 728H-06-W178 for ValuJet Airlines aircraft N802VV that all cabin oxygen generators had been removed and replaced per ValuJet card 0069.

F.  On or about May 10, 1996, **SabreTech, Inc.** prepared a shipping ticket which described unexpended, uncapped, ignitable oxygen generators as: *"5 boxes" Oxy. Cannisters "Empty"*.

G.  On or about May 11, 1996, **SabreTech, Inc.** delivered unexpended, uncapped, ignitable oxygen generators, accompanied by the aforesaid shipping ticket, to a ValuJet aircraft, that is, N904VJ departing Miami International Airport as ValuJet flight 592, which aircraft crashed in flames approximately 11 minutes later, killing all 110 persons on board.

All in violation of Title 18, United States Code, Section 371.

## COUNT II

19.  The allegations of Paragraphs 2 - 13 of Count I are hereby realleged and incorporated by reference as if set forth fully.

20.  In or about December, 1995, in the Southern District of Florida, the defendant,

### DANIEL GONZALEZ,

in a matter within the jurisdiction of the Department of Transportation and the FAA, did knowingly and willfully make a materially false, fraudulent and fictitious statement and representation, and did knowingly and willfully make and use a writing and document knowing the same to contain a

materially false, fictitious and fraudulent statement and entry, in that the defendant, **DANIEL GONZALEZ**, made, executed and signed as "mechanic" work card R-45904 for Aserca Airlines aircraft YV720C, knowing in truth and in fact that he was not the mechanic who had performed the work described therein, and that the work had not been performed as described therein.

All in violation of Title 18, United States Code, Sections 1001 and 2.

### COUNT III

21. The allegations of Paragraphs 2 - 13 of Count I are hereby realleged and incorporated by reference as if set forth fully.

22. In or about April, 1996, in the Southern District of Florida, the defendants,

**SABRETECH, INC., and
MAURO VALENZUELA,**

in a matter within the jurisdiction of the Department of Transportation and the FAA, did knowingly and willfully make a materially false, fraudulent and fictitious statement and representation, and did knowingly and willfully make and use a writing and document knowing the same to contain a materially false, fictitious and fraudulent statement and entry, in that the defendants, **SABRETECH, INC.,** and **MAURO VALENZUELA**, made, executed and signed off on Work Card No. 0069 for ValuJet Airlines aircraft N803VV, knowing in truth and in fact that the work had not been performed as described therein, and that shipping caps had not been installed on unexpended oxygen generators.

All in violation of Title 18, United States Code, Sections 1001 and 2.

## COUNT IV

23.  The allegations of Paragraphs 2 - 13 of Count I are hereby realleged and incorporated by reference as if set forth fully.

24.  On or about April 26, 1996, in the Southern District of Florida, the defendants,

**SABRETECH, INC., and
MAURO VALENZUELA,**

in a matter within the jurisdiction of the Department of Transportation and the FAA, did knowingly and willfully make a materially false, fraudulent and fictitious statement and representation, and did knowingly and willfully make and use a writing and document knowing the same to contain a materially false, fictitious and fraudulent statement and entry, in that the defendants, **SABRETECH, INC.,** and **MAURO VALENZUELA,** made, executed and signed off on a non-routine work card for work order 730H-06-W253 for ValuJet Airlines aircraft N803VV stating that all cabin oxygen generators had been removed and replaced per ValuJet card 0069, knowing in truth and in fact that the oxygen generators had not been removed and replaced per ValuJet card 0069 in that shipping caps had not been installed on the unexpended oxygen generators as provided on ValuJet card 0069.

All in violation of Title 18, United States Code, Sections 1001 and 2.

## COUNT V

25.  The allegations of Paragraphs 2 - 13 of Count I are hereby realleged and incorporated by reference as if set forth fully.

26.  In or about May, 1996, in the Southern District of Florida, the defendants,

**SABRETECH, INC., and
EUGENE FLORENCE,**

in a matter within the jurisdiction of the Department of Transportation and the FAA, did knowingly and willfully make a materially false, fraudulent and fictitious statement and representation, and did knowingly and willfully make and use a writing and document knowing the same to contain a materially false, fictitious and fraudulent statement and entry, in that the defendants, **SABRETECH, INC.,** and **EUGENE FLORENCE,** made, executed and signed off on Work Card No. 0069 for ValuJet Airlines aircraft N802VV, knowing in truth and in fact that the work had not been performed as described therein, and that shipping caps had not been installed on unexpended oxygen generators.

All in violation of Title 18, United States Code, Sections 1001 and 2.

### COUNT VI

27. The allegations of Paragraphs 2 - 13 of Count I are hereby realleged and incorporated by reference as if set forth fully.

28. On or about May 4, 1996, in the Southern District of Florida, the defendants,

**SABRETECH, INC., and**
**EUGENE FLORENCE,**

in a matter within the jurisdiction of the Department of Transportation and the FAA, did knowingly and willfully make a materially false, fraudulent and fictitious statement and representation, and did knowingly and willfully make and use a writing and document knowing the same to contain a materially false, fictitious and fraudulent statement and entry, in that the defendants, **SABRETECH, INC.,** and **EUGENE FLORENCE,** made, executed and signed off on a non-routine work card for work order 728H-06-W178 for ValuJet Airlines aircraft N802VV stating that all cabin oxygen generators had been removed and replaced per ValuJet card 0069, knowing in truth and in fact that

the oxygen generators had not been removed and replaced per ValuJet card 0069 in that shipping caps had not been installed on the unexpended oxygen generators as provided on ValuJet card 0069.

All in violation of Title 18, United States Code, Sections 1001 and 2.

## COUNTS VII - XXIV

### Introduction

At all times material to this indictment:

29.   The allegations of Paragraphs 2 - 13 of Count I are hereby realleged and incorporated by reference as if set forth fully.

30.   Congress has provided that the Department of Transportation shall regulate and enforce the permitted means by which hazardous materials may be transported in commerce, so as to provide adequate protection against the risks to life and property inherent in such transport. The Hazardous Materials Regulations, which appear at 49 C.F.R. Parts 171 - 180, specify requirements for the safe transportation of hazardous materials in commerce. They apply to each person who performs, or causes to be performed, functions related to the transportation of hazardous materials including determination of, and compliance with, basic conditions for offering hazardous materials in transport; filling packages; marking and labeling packages; preparing shipping papers; handling, loading, securing and segregating packages within a transport vehicle or cargo hold; and transporting hazardous materials. In general, the Hazardous Materials Regulations prescribe requirements for classification, packaging, hazard communication, incident reporting, handling and transportation of hazardous materials.

-11-

31. Pursuant to its authority, the Department of Transportation has designated materials, and groups or classes of materials, as hazardous because they are capable of posing an unreasonable risk to health, safety and property when transported. The hazardous materials were set forth in a table in the Code of Federal Regulations, at 49 C.F.R. Section 172.101 (1996)(hereafter "1996 table"), by the chemical name or hazardous characteristic category, such as corrosive, toxic, flammable and oxidizing materials. An oxidizing material, or *oxidizer*, is a material that may, generally by yielding oxygen, cause or enhance the combustion of other materials. The 1996 table named oxidizing solids, not otherwise specified, as hazardous materials within hazard class 5.1 with United Nations identification number UN1479. The 1996 table named sodium chlorate as hazardous material within hazard class 5.1 with United Nations identification number UN1495. Sodium chlorate is an oxidizing solid and the main content of oxygen generators which had been removed in approximately March and April, 1996, by SabreTech from ValuJet aircraft N803VV and N802VV (hereafter "the oxygen generators").

32. The oxygen generators were, and contained, hazardous material. The oxygen generators also were, and contained, hazardous waste in that they were a solid waste which exhibited the characteristic of ignitability, pursuant to 40 C.F.R. Section 261.21.

## COUNT VII

33. Between in or about March, 1996, and May 11, 1996, in the Southern District of Florida, the defendant,

## SABRETECH, INC.,

did willfully offer hazardous material, that is, oxygen generators containing sodium chlorate, for

-12-

transportation in commerce when the hazardous material was not properly classed, described, packaged, marked, labeled, and in condition for shipment as required and authorized by the Hazardous Materials Regulations (49 C.F.R. Parts 171-180).

All in violation of Title 49, United States Code, Section 5124; Title 18, United States Code, Section 2; and 49 C.F.R. Section 171.2(a).

## COUNT VIII

34. Between in or about March, 1996, and May 11, 1996, in the Southern District of Florida, the defendant,

### SABRETECH, INC.,

did willfully deliver, and cause to be delivered, to an air carrier and to an operator of a civil aircraft, that is, ValuJet aircraft N904VJ, for transportation in air commerce, property containing hazardous material, that is, oxygen generators containing sodium chlorate, in violation of 49 C.F.R. Section 171.2(a), as more fully set forth at Paragraph 33 in Count VII, which paragraph is realleged and incorporated herein except for the word "willfully", and the defendants,

### SABRETECH, INC.,
### EUGENE FLORENCE, and
### MAURO VALENZUELA,

did recklessly cause the transportation in air commerce of property containing hazardous material, that is, oxygen generators containing sodium chlorate, in violation of 49 C.F.R. Section 171.2(a), as more fully set forth at Paragraph 33 in Count VII, which paragraph is realleged and incorporated herein except for the word "willfully".

All in violation of Title 49, United States Code, Section 46312 and Title 18, United States

-13-

Code, Section 2.

## COUNT IX

35. Between in or about March, 1996, and May 11, 1996, in the Southern District of Florida, the defendant,

### SABRETECH, INC.,

did willfully offer hazardous waste, that is, oxygen generators containing sodium chlorate, which had been removed from ValuJet aircraft N803VV and N802VV, for transportation in interstate commerce when the hazardous waste was not in accordance with the requirements for the transportation of hazardous waste as provided at Subchapter C of the Hazardous Materials Regulations.

All in violation of Title 49, United States Code, Section 5124; Title 18, United States Code, Section 2; and 49 C.F.R. Section 171.3(a).

## COUNT X

36. Between in or about March, 1996, and May 11, 1996, in the Southern District of Florida, the defendant,

### SABRETECH, INC.,

did willfully deliver, and cause to be delivered, to an air carrier and to an operator of a civil aircraft, that is, ValuJet aircraft N904VJ, for transportation in air commerce, property containing hazardous material, that is, oxygen generators containing sodium chlorate, in violation of 49 C.F.R. Section 171.3(a), as more fully set forth at Paragraph 35 in Count IX, which paragraph is realleged and incorporated herein except for the word "willfully", and the defendants,

**SABRETECH, INC.,**
**EUGENE FLORENCE, and**
**MAURO VALENZUELA,**

did recklessly cause the transportation in air commerce of property containing hazardous material,

that is, oxygen generators containing sodium chlorate, in violation of 49 C.F.R. Section 171.3(a), as

more fully set forth at Paragraph 35 in Count IX, which paragraph is realleged and incorporated

herein except for the word "willfully".

All in violation of Title 49, United States Code, Section 46312 and Title 18, United States

Code, Section 2.

## COUNT XI

37. Between in or about March, 1996, and May 11, 1996, in the Southern District of Florida,

the defendant,

**SABRETECH, INC.,**

did willfully describe and cause to be described hazardous material, that is, oxygen generators

containing sodium chlorate, on a shipping paper without including the hazardous material's proper

shipping name, prescribed hazard class or division, identification number, packing group, or total

quantity.

All in violation of Title 49, United States Code, Section 5124; Title 18, United States Code,

Section 2; and 49 C.F.R. Section 172.202(a)(1)-(5).

## COUNT XII

38. Between in or about March, 1996, and May 11, 1996, in the Southern District of Florida,

the defendant,

-15-

**SABRETECH, INC.,**

did willfully deliver, and cause to be delivered, to an air carrier and to an operator of a civil aircraft,

that is, ValuJet aircraft N904VJ, for transportation in air commerce, property containing hazardous

material, that is, oxygen generators containing sodium chlorate, in violation of 49 C.F.R. Section

172.202(a)(1)-(5), as more fully set forth at Paragraph 37 in Count XI, which paragraph is realleged

and incorporated herein except for the word "willfully", and the defendants,

**SABRETECH, INC.,**
**EUGENE FLORENCE, and**
**MAURO VALENZUELA,**

did recklessly cause the transportation in air commerce of property containing hazardous material,

that is, oxygen generators containing sodium chlorate, in violation of 49 C.F.R. Section

172.202(a)(1)-(5), as more fully set forth at Paragraph 37 in Count XI, which paragraph is realleged

and incorporated herein except for the word "willfully".

All in violation of Title 49, United States Code, Section 46312 and Title 18, United States

Code, Section 2.

## COUNT XIII

39. Between in or about March, 1996, and May 11, 1996, in the Southern District of Florida,

the defendant,

**SABRETECH, INC.,**

did willfully offer for transportation hazardous material, that is, oxygen generators containing sodium

chlorate, without marking each package containing the hazardous material with the proper shipping

name and identification number, preceded by "UN", as shown in the 49 C.F.R. Section 172.101 table.

All in violation of Title 49, United States Code, Section 5124; Title 18, United States Code, Section 2; and 49 C.F.R. Sections 172.300 and 172.301(a).

## COUNT XIV

40. Between in or about March, 1996, and May 11, 1996, in the Southern District of Florida, the defendant,

### SABRETECH, INC.,

did willfully deliver, and cause to be delivered, to an air carrier and to an operator of a civil aircraft, that is, ValuJet aircraft N904VJ, for transportation in air commerce, property containing hazardous material, that is, oxygen generators containing sodium chlorate, in violation of 49 C.F.R. Sections 172.300 and 172.301(a), as more fully set forth at Paragraph 39 in Count XIII, which paragraph is realleged and incorporated herein except for the word "willfully", and the defendants,

### SABRETECH, INC.,
### EUGENE FLORENCE, and
### MAURO VALENZUELA,

did recklessly cause the transportation in air commerce of property containing hazardous material, that is, oxygen generators containing sodium chlorate, in violation of 49 C.F.R. Sections 172.300 and 172.301(a), as more fully set forth at Paragraph 39 in Count XIII, which paragraph is realleged and incorporated herein except for the word "willfully".

All in violation of Title 49, United States Code, Section 46312 and Title 18, United States Code, Section 2.

-17-

## COUNT XV

41. Between in or about March, 1996, and May 11, 1996, in the Southern District of Florida, the defendant,

### SABRETECH, INC.,

did willfully offer for transportation hazardous material, that is, oxygen generators containing sodium chlorate, which hazardous material was packed and mixed together in the same outer packaging with other materials which were capable of reacting dangerously with each other and causing combustion and dangerous evolution of heat.

All in violation of Title 49, United States Code, Section 5124; Title 18, United States Code, Section 2; and 49 C.F.R. Section 173.24(e)(4).

## COUNT XVI

42. Between in or about March, 1996, and May 11, 1996, in the Southern District of Florida, the defendant,

### SABRETECH, INC.,

did willfully deliver, and cause to be delivered, to an air carrier and to an operator of a civil aircraft, that is, ValuJet aircraft N904VJ, for transportation in air commerce, property containing hazardous material, that is, oxygen generators containing sodium chlorate, in violation of 49 C.F.R. Section 173.24(e)(4), as more fully set forth at Paragraph 41 in Count XV, which paragraph is realleged and incorporated herein except for the word "willfully", and the defendants,

### SABRETECH, INC.,
### EUGENE FLORENCE, and
### MAURO VALENZUELA,

-18-

did recklessly cause the transportation in air commerce of property containing hazardous material, that is, oxygen generators containing sodium chlorate, in violation of 49 C.F.R. Section 173.24(e)(4), as more fully set forth at Paragraph 41 in Count XV, which paragraph is realleged and incorporated herein except for the word "willfully".

All in violation of Title 49, United States Code, Section 46312 and Title 18, United States Code, Section 2.

## COUNT XVII

43. Between in or about March, 1996, and May 11, 1996, in the Southern District of Florida, the defendant,

## SABRETECH, INC.,

did willfully offer for transportation hazardous material, that is, oxygen generators containing sodium chlorate, in five packages which were not designed, constructed, maintained, filled and their contents so limited and closed that under conditions normally incident to transportation the effectiveness of the packages would not be substantially reduced.

All in violation of Title 49, United States Code, Section 5124; Title 18, United States Code, Section 2; and 49 C.F.R. Section 173.24(b)(2).

## COUNT XVIII

44. Between in or about March, 1996, and May 11, 1996, in the Southern District of Florida, the defendant,

## SABRETECH, INC.,

did willfully deliver, and cause to be delivered, to an air carrier and to an operator of a civil aircraft,

-19-

that is, ValuJet aircraft N904VJ, for transportation in air commerce, property containing hazardous material, that is, oxygen generators containing sodium chlorate, in violation of 49 C.F.R. Section 173.24(b)(2), as more fully set forth at Paragraph 43 in Count XVII, which paragraph is realleged and incorporated herein except for the word "willfully", and the defendants,

**SABRETECH, INC.,**
**EUGENE FLORENCE, and**
**MAURO VALENZUELA,**

did recklessly cause the transportation in air commerce of property containing hazardous material, that is, oxygen generators containing sodium chlorate, in violation of 49 C.F.R. Section 173.24(b)(2), as more fully set forth at Paragraph 43 in Count XVII, which paragraph is realleged and incorporated herein except for the word "willfully".

All in violation of Title 49, United States Code, Section 46312 and Title 18, United States Code, Section 2.

**COUNT XIX**

45. Between in or about March, 1996, and May 11, 1996, in the Southern District of Florida, the defendant,

**SABRETECH, INC.,**

did willfully offer for transportation hazardous material, that is, oxygen generators containing sodium chlorate, in packagings whose cushioning material was capable of reacting dangerously with the contents of the inner packagings.

All in violation of Title 49, United States Code, Section 5124; Title 18, United States Code, Section 2; and 49 C.F.R. Section 173.24a(a)(3).

-20-

## COUNT XX

46. Between in or about March, 1996, and May 11, 1996, in the Southern District of Florida, the defendant,

### SABRETECH, INC.,

did willfully deliver, and cause to be delivered, to an air carrier and to an operator of a civil aircraft, that is, ValuJet aircraft N904VJ, for transportation in air commerce, property containing hazardous material, that is, oxygen generators containing sodium chlorate, in violation of 49 C.F.R. Section 173.24a(a)(3), as more fully set forth at Paragraph 45 in Count XIX, which paragraph is realleged and incorporated herein except for the word "willfully", and the defendants,

### SABRETECH, INC.,
### EUGENE FLORENCE, and
### MAURO VALENZUELA,

did recklessly cause the transportation in air commerce of property containing hazardous material, that is, oxygen generators containing sodium chlorate, in violation of 49 C.F.R. Section 173.24a(a)(3), as more fully set forth at Paragraph 45 in Count XIX, which paragraph is realleged and incorporated herein except for the word "willfully".

All in violation of Title 49, United States Code, Section 46312 and Title 18, United States Code, Section 2.

## COUNT XXI

47. Between in or about March, 1996, and May 11, 1996, in the Southern District of Florida, the defendant,

### SABRETECH, INC.,

-21-

did willfully offer for transportation by air hazardous material, that is, oxygen generators containing sodium chlorate, when the quantity of sodium chlorate in each of the five packages offered for transportation aboard a passenger-carrying aircraft exceeded the maximum quantity prescribed for sodium chlorate in Column 9a of the 49 C.F.R. Section 172.101 table.

All in violation of Title 49, United States Code, Section 5124; Title 18, United States Code, Section 2; and 49 C.F.R. Section 173.27(b)(3).

## COUNT XXII

48.  Between in or about March, 1996, and May 11, 1996, in the Southern District of Florida, the defendant,

### SABRETECH, INC.,

did willfully deliver, and cause to be delivered, to an air carrier and to an operator of a civil aircraft, that is, ValuJet aircraft N904VJ, for transportation in air commerce, property containing hazardous material, that is, oxygen generators containing sodium chlorate, in violation of 49 C.F.R. Section 173.27(b)(3), as more fully set forth at Paragraph 47 in Count XXI, which paragraph is realleged and incorporated herein except for the word "willfully", and the defendants,

### SABRETECH, INC.,
### EUGENE FLORENCE, and
### MAURO VALENZUELA,

did recklessly cause the transportation in air commerce of property containing hazardous material, that is, oxygen generators containing sodium chlorate, in violation of 49 C.F.R. Section 173.27(b)(3), as more fully set forth at Paragraph 47 in Count XXI, which paragraph is realleged and incorporated herein except for the word "willfully".

-22-

All in violation of Title 49, United States Code, Section 46312 and Title 18, United States Code, Section 2.

## COUNT XXIII

49. At all times material to this indictment, SabreTech was a "hazmat employer" in that SabreTech used one or more of its employees in connection with transporting hazardous materials in commerce and causing hazardous materials to be transported and shipped in commerce.

50. Between in or about January, 1996, and May 11, 1996, in the Southern District of Florida, the defendant,

### SABRETECH, INC.,

being a hazmat employer, did willfully fail to ensure that each of its hazmat employees was trained in accordance with the requirements prescribed in the Training subpart to the Hazardous Materials Regulations, including the requirement that each hazmat employee be provided function-specific training on the requirements of the Hazardous Materials Regulations specifically applicable to the functions the employee performed.

All in violation of Title 49, United States Code, Section 5124; Title 18, United States Code, Section 2; and 49 C.F.R. Sections 172.702(a) and 172.704(a)(2).

## COUNT XXIV

51. Oxygen generators are, and contain, flammable material, explosive substance, and matter of a combustible and explosive nature.

52. On or about May 11, 1996, in the Southern District of Florida, the defendant,

### SABRETECH, INC.,

-23-

did knowingly and willfully place and cause to be placed destructive devices and substances, that is,

oxygen generators, in, upon and in proximity to ValuJet aircraft N904VJ, a civil aircraft used,

operated and employed in interstate commerce, and did knowingly and willfully make and cause

ValuJet aircraft N904VJ to be made unworkable and unusable and hazardous to work with and use,

so that such placing and causing to be placed, and such making and causing to be made, were likely

to endanger the safety of ValuJet aircraft N904VJ.

All in violation of Title 18, United States Code, Sections 31, 32 and 2.

A TRUE BILL

_____
FOREPERSON

_____
GUY A. LEWIS
ACTING UNITED STATES ATTORNEY

_____
CAROLINE HECK MILLER
ASSISTANT UNITED STATES ATTORNEY

_____
ANDREW G. OOSTERBAAN
ASSISTANT UNITED STATES ATTORNEY

-24-

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

# 99-00491 CR-KING

Defendant Name: SABRETECH, INC.    Case No. _____

---

Count #:  1

___ 18 USC 371

_____ Conspiracy to Make False Statements to FAA and Department of Transportation

**\*Max. Penalty:**    **$250,000 fine**

MAGISTRATE JUDGE
O'SULLIVAN

===================================================================

Counts #:   3, 4, 5, 6,

_____ 18 USC 1001

_____ False Statement to FAA and Department of Transportation

**\*Max. Penalty:**    **$250,000 fine**

===================================================================

Counts #: 7, 9, 13, 15, 17, 19, 21

_____ 49 USC 5124 , 18 USC 2

_____ Offering for Transportation in Commerce of Hazardous Material

**\*Max. Penalty:**    **$250,000 fine**

===================================================================

Counts #:   8 , 10, 12, 14, 16, 18, 20, 22

_____ 49 USC 46312 and 18 USC 2

_____ Delivery to Air Carrier for transportation in Commerce of hazardous material

**\*Max. Penalty:**    **$250,000 fine**

Count #: 11

_____ 49 USC 5124 , 18 USC 2

_____ Improper Identification of Hazardous Material for Shipping in Commerce

**\*Max. Penalty:**    **$250,000 fine**

Count #: 23

49 USC 5124 , 18 USC 2

Failure to Ensure Proper Training of Employee to Handle Hazardous Material

**\*Max. Penalty:**      $250,000

Count #: 24

18 USC 31, 32 and 2

Unlawful Placement of Destructive Devices on a Civil Aircraft

**\*Max. Penalty:**      $250,000

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

Defendant Name: DANIEL GONZALEZ   Case No. 99-00491 CR-KING

MAGISTRATE JUDGE
O'SULLIVAN

Count #:  1

___18 USC 371___

___Conspiracy to Make False Statements to FAA and Department of Transportation___

*Max. Penalty:     5 years' imprisonment, $250,000 fine

Count #:  2

___18 USC 1001___

___False Statements to FAA and Department of Transportation___

*Max. Penalty:     5 years' imprisonment, $250,000 fine

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

# 99 - 00491 CR-KING

Defendant Name: EUGENE FLORENCE____ Case No._____

MAGISTRATE JUDGE
O'SULLIVAN

Count #:  1

____18 USC 371

____Conspiracy to Make False Statements to FAA and Department of Transportation

*Max. Penalty:____5 years' imprisonment, $250,000 fine

Counts #:  5, 6

____18 USC 1001

____False Statements to FAA and Department of Transportation

*Max. Penalty:____5  years' imprisonment, $250,000

Counts #:  8 , 10, 12, 14, 16, 18, 20, 22

____49 USC 46312 and 18 USC 2

____Causing the Transportation of Hazardous Material

*Max. Penalty:____5 years' imprisonment, $250,000

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### *PENALTY SHEET*

# 99 - 00491 CR - KING

**Defendant Name: MAURO VALENZUELA**     Case No. 

---

Count #:   1

18 USC 371                                    MAGISTRATE JUDGE
                                                 O'SULLIVAN

Conspiracy to Make False Statements to FAA and Department of Transportation

**\*Max. Penalty:        5 years' imprisonment, $250,000**

---

Counts #:   3, 4

18 USC 1001

False Statements to FAA and Department of Transportation

**\*Max. Penalty:        5 years' imprisonment, $250,000**

---

Counts #:   8 , 10, 12, 14, 16, 18, 20, 22

49 USC 46312 and 18 USC 2

Causing the Transportation of Hazardous Material

**\*Max. Penalty:        5 years' imprisonment, $250,000**

---

Count #:

**\*Max. Penalty:**

Count #:

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA 99-00491 CR-KING

v.
SABRETECH, INC., ET AL

**CERTIFICATE OF TRIAL ATTORNEY:**

MAGISTRATE JUDGE
O'SULLIVAN

**Superseding Case Information:**

New Defendant(s)       Yes____   No _X_
Number of New Defendants ____
Total number of counts ____ 24

**Court Division:** (Select One)

_X_ Miami ____ Key West
____ FTL ____ WPB ____ FTP

I do hereby certify that:

1.   I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.   I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.   Interpreter:       (Yes or No) _YES_
     List language and/or dialect ____SPANISH____

4.   This case will take _20_ days for the parties to try.

5.   Please check appropriate category and type of offense listed below:
     (Check only one)                          (Check only one)

| | | | | | |
|---|---|---|---|---|---|
| I | 0 to 5 days | ____ | | Petty | ____ |
| II | 6 to 10 days | ____ | | Minor | ____ |
| III | 11 to 20 days | _X_ | | Misdem. | ____ |
| IV | 21 to 60 days | ____ | | Felony | _X_ |
| V | 61 days and over | ____ | | | |

6.   Has this case been previously filed in this District Court? (Yes or No) _NO_
If yes:
Judge: _____       Case No. _____
(Attach copy of dispositive order)

Has a complaint been filed in this matter? (Yes or No) _NO_
If yes:
Magistrate Case No. _____
Related Miscellaneous numbers: _____
Defendant(s) in federal custody as of _____
Defendant(s) in state custody as of _____
Rule 20 from the _____ District of _____

Is this a potential death penalty case? (Yes or No) _____NO_____

7.   Does this case originate from a matter pending in the U. S. Attorney's Office prior to
April 1, 1999? __ Yes _X_ No   If yes, was it pending in the Central Region? __ Yes _X_ No

ANDREW G. OOSTERBAAN
ASSISTANT UNITED STATES ATTORNEY
COURT No. A5500046

*Penalty Sheet(s) attached
N:\udd\jnotheis\forms\sabretech.cert.wpd

REV.3/19/99

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

99-00485 CR-SEITZ

UNITED STATES OF AMERICA          CASE NO.

v.                                **CERTIFICATE OF TRIAL ATTORNEY***

**Keith Gladston Williamson**     MAGISTRATE JUDGE
**and**                                       GARBER
**Renault Valentino Tomlinson**   Superseding Case Information:

**Court Division:** (Select One)

| | | New Defendant(s) | Yes ___ No _X_ |
| | | Number of New Defendants | |
| _X_ Miami | ___ Key West | Total number of counts | |
| ___ FTL | ___ WPB ___ FTP | | |

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:        (Yes or No) __NO__
   List language and/or dialect _____

4. This case will take __4__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:
   (Check only one)                    (Check only one)

| | | | |
|---|---|---|---|
| I | 0 to 5 days | _X_ | Petty ___ |
| II | 6 to 10 days | ___ | Minor ___ |
| III | 11 to 20 days | ___ | Misdem. ___ |
| IV | 21 to 60 days | ___ | Felony _X_ |
| V | 61 days and over | ___ | |

6. Has this case been previously filed in this District Court? (Yes or No) **No**
   If yes:
   Judge: _____  Case No. _____
   (Attach copy of dispositive order)

   Has a complaint been filed in this matter? (Yes or No) __Yes__
   If yes:
   Magistrate Case No. __99-3051-DUBE__

   Related Miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the _____  District of _____

   Is this a potential death penalty case? (Yes or No) __NO__

7. Does this case originate from a matter pending in the U. S. Attorney's Office prior to April 1, 1999? **YES** ___ Yes ___ No   If yes, was it pending in the Central Region? ___ Yes _X_ No

_____
MICHAEL J. MULLANEY
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 0794317

*Penalty Sheet(s) attached                                      REV.4/7/99

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

99-00485-CR-SEITZ

PENALTY SHEET MAGISTRATE JUDGE
GARBER

Defendant's Name: **KEITH GLADSTON WILLIAMSON** Case No._____

---

Count #: I

Conspiracy to import marijuana and cocaine
21 U.S.C. 963
*Max. Penalty: Life imprisonment

========================================================

Count #: II

Importation of marijuana
21 U.S.C.952(a)

*Max. Penalty: 40 years imprisonment

========================================================

Count #: III

Conspiracy to possess with intent to distribute marijuana
21 U.S.C. 846

*Max. Penalty: 40 years imprisonment

========================================================

Count #: IV

Possession with intent to distribute marijuana
21 U.S.C. 841(a)(1)

*Max. Penalty: 40 years imprisonment

========================================================

Count #:


*Max. Penalty:
========================================================
    *Refers only to possible term of incarceration, does not
    include possible fines, restitution, special assessments,
    parole terms, or forfeitures that may be applicable.
========================================================

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

# 99 - 00485

PENALTY SHEET

CR-SEITZ

MAGISTRATE JUDGE
GARBER

Defendant's Name: **RENAULT VALENTINO TOMLINSON** Case No. _____

Count #: III

Conspiracy to possess with intent to distribute marijuana
21 U.S.C. 846

*Max. Penalty: 40 years imprisonment
==================================================================
Count #:   IV

Possession with intent to distribute marijuana
21 U.S.C. 841(a)(1)

*Max. Penalty: 40 years imprisonment
==================================================================
Count #:

_____

*Max. Penalty:
==================================================================
Count #:

_____

*Max. Penalty:
==================================================================
Count #:

_____

*Max. Penalty:
==================================================================
     *Refers only to possible term of incarceration, does not
     include possible fines, restitution, special assessments,
     parole terms, or forfeitures that may be applicable.
==================================================================



UNITED STATES OF AMERICA
SOUTHERN DISTRICT COURT

CASE NO. _99-3051- Dube_

UNITED STATES OF AMERICA

v.

**NOTICE OF TEMPORARY**
**APPEARANCE AS COUNSEL**

_Renault Tomlinson_

COMES NOW _Gregory A. Samms Esq_ and files this temporary appearance as counsel for the above named defendant(s) at initial appearance. This appearance is made with the **understanding** that the undersigned counsel will fulfill any **obligations imposed** by the Court such as **preparing and filing** documents necessary to collateralize any **personal surety bond** which may be set.

Counsel's Name (**Printed**) _Gregory A. Samms_

Counsel's Signature _Gregory G Samms_

Address _2800 Biscayne Blvd. 9th floor_
_Miami   Fl_   ZIP CODE: _33137_

Telephone _(305) 573-2444_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. *99-3051- Nube*

UNITED STATES OF AMERICA,

vs.

*Keith Williamson*

_____



FILED by ___ D.C.
MAG. SEC.
JUL 1 2 1999
CARLOS JUENKE
CLERK U.S. DIST. CT.
S.D. OF FLA. MIAMI

This cause came before the Court and pursuant to proceedings held, it is thereupon

**ORDERED AND ADJUDGED** as follows: *At the request of the defendant and no objections from government, the Pretrial Detention hearing is Reset to July 16, 1999 at 10am before the duty Magistrate Judge. Report re Counsel is also Reset to 7/16/99.*

**DONE AND ORDERED** at Miami, Florida this ___ *12th* ___ day of *July* ___, 19 *99*.

TAPE NO: 99 *G90-2155*

_____
UNITED STATES MAGISTRATE JUDGE
WILLIAM C. TURNOFF

c: AUSA
   Defense Counsel
   Pretrial Services
   U.S. Marshal

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 99-3051-DUBE

UNITED STATES OF AMERICA,

vs.                                    **ORDER ON HEARING TO**
                                       **REPORT RE COUNSEL**

RENAULT TOMLINSON

    The above named defendant having appeared before the Court as
ordered and reported efforts to retain counsel, it is thereupon

ORDERED as follows:

          Private counsel_____
          appeared in open court and is noted as
          counsel of record.

          The defendant requested Court appointed counsel, was
          found eligible, and counsel will be appointed by
          separate order.

          The defendant requested Court appointed counsel but
          was found ineligible, and shall appear before the
          Court on _____
          at 10:00 a.m. to report regarding his/her further
          efforts to retain counsel, unless counsel notices a
          permanent appearance before that date.

     ✓    The defendant requested further time to retain
          counsel and shall appear before the Court on
          7-16-99_____ at 10:00 a.m. to report
          regarding his/her further efforts to retain counsel,
          unless counsel notices a permanent appearance before
          that date.

    **DONE AND ORDERED** at Miami, Florida this _____12th_____ day
of _____JULY_____, 1999.

TAPE NO.99G 90-215-5

                   UNITED STATES MAGISTRATE JUDGE
c: AUSA               WILLIAM C. TURNOFF
   Defense Counsel
   Pretrial Services or Probation
   U.S. Marshal

FILED
MAG. SEC.
JUL 12 1999
CARLOS JUENKE
CLERK
S.D. DIST. CT.
FLA. MIAMI
D.C.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 99-3051-DUBE

UNITED STATES OF AMERICA,

            Plaintiff,

vs.

RENAULT TOMLINSON

          Defendant.

ORDER



    Pursuant to the Bail Reform Act, a detention hearing was held this date in accordance with 18 U.S.C. Section 3142(f). At the conclusion of the evidentiary hearing, the findings of fact and conclusions of law required by the Act were dictated into the record. It is thereupon

    **ORDERED AND ADJUDGED** as follows:

    1. The Defendant   above named   shall be detained pending trial in this case for the reasons stated on the record by the Court.

    2. A final Order of Detention memorializing the dictated findings and conclusions shall be entered forthwith.

    **DONE AND ORDERED** in Miami, Florida this _12th_ day of

_JULY_ , 19 _99_.

TAPE NO. 99G 70-2155

UNITED STATES MAGISTRATE JUDGE
WILLIAM C. TURNOFF

c: AUSA
   Defense Counsel
   Pretrial Services
   U.S. Marshal
formoptd

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 99-3051-DUBE'

UNITED STATES OF AMERICA,

vs.                                    **ORDER ON HEARING TO**
                                       **REPORT RE COUNSEL**

RENAULT VALENTINO TOMLINSON

    The above named defendant having appeared before the Court as
ordered and reported efforts to retain counsel, it is thereupon

ORDERED as follows:

_____  Private counsel_____
            appeared in open court and is noted as permanent
            counsel of record.

_____  The defendant requested Court appointed counsel, was
            found eligible, and counsel will be appointed by
            separate order.

_____  The defendant requested Court appointed counsel but
            was found ineligible, and shall appear before the
            Court on _____
            at 10:00 a.m. to report regarding his/her further
            efforts to retain counsel, unless counsel notices a
            permanent appearance before that date.

_____  The defendant requested further time to retain
            counsel and shall appear before the Court on
            _____7\12\99_____ at 10:00 a.m. to report
            regarding his/her further efforts to retain counsel,
            unless counsel notices a permanent appearance before
            that date.

**DONE AND ORDERED** at Miami, Florida this _____8TH_____ day of

__JULY_____, 1999.

TAPE NO. 99H- 31-1828        _____
                            UNITED STATES MAGISTRATE JUDGE
                            ROBERT L. DUBE'

c. Defense Counsel
   Pretrial Services or Probation
   U.S. Marshal
   AUSA



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 99-3051-DUBE'

UNITED STATES OF AMERICA,

vs.                                    **ORDER ON HEARING TO**
                                       **REPORT RE COUNSEL**

KEITH GLADSTONE **WILLIAMSON**

    The above named defendant having appeared before the Court as
ordered and reported efforts to retain counsel, it is thereupon

ORDERED as follows:

    _____ Private counsel_____
    appeared in open court and is noted as permanent
    counsel of record.

    _____ The defendant requested Court appointed counsel, was
    found eligible, and counsel will be appointed by
    separate order.

    _____ The defendant requested Court appointed counsel but
    was found ineligible, and shall appear before the
    Court on _____
    at 10:00 a.m. to report regarding his/her further
    efforts to retain counsel, unless counsel notices a
    permanent appearance before that date.

    _____ The defendant requested further time to retain
    counsel and shall appear before the Court on
    _____ at 10:00 a.m. to report
    regarding his/her further efforts to retain counsel,
    unless counsel notices a permanent appearance before
    that date.

    **DONE AND ORDERED** at Miami, Florida this _____8TH_____ day of

\_\_JULY_____, 1999.

TAPE NO. 99H-31-1828

                         UNITED STATES MAGISTRATE JUDGE
                         ROBERT L. DUBE'

c. Defense Counsel
   Pretrial Services or Probation
   U.S. Marshal
   AUSA

___ i. Comply with the following additional special conditions of this bond: _____

_____

_____

This bond was set: At Arrest    _____

On Warrant    _____

After hearing _____

If bond is changed from that set in another District, the reason pursuant to Rule 40(f) is _____

_____

_____

___ If this space is checked, an evidentiary hearing pursuant to *United States v. Nebbia*, 357, F.2d 303 (2 Cir. 1966) shall be held prior to the posting of the bond. Such hearing shall be scheduled promptly upon notification to the court that the defendant is ready to post the bond.

7. The defendant has been advised by the court that if he or she is released on bond pursuant to the conditions set forth herein or those later ordered by the court, the defendant is subject to arrest and revocation of release and to various civil and criminal sanctions for any violation of those conditions. These various sanctions and penalties are set forth more fully in the Appearance Bond itself.

8. The defendant is committed to the custody of the United States Marshal until an appearance bond has been executed in accordance with this or subsequent court order.

DONE AND ORDERED at  Ft. Lauderdale this   6  day of ___July_____, 19 99

_____

UNITED STATES MAGISTRATE JUDGE

DISTRIBUTION:
    WHITE to Court file
    BLUE to defendant
    GREEN to Assistant U.S. Attorney
    YELLOW to Counsel
    PINK to U.S. Marshal
    GOLD TO Pretrial Services

SD/F M-1
Rev.12/95

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: ___99-3051-Dube___

UNITED STATES OF AMERICA,

    Plaintiff,

v.

Keith Williamson

    Defendant.

_____/

*RECEIVED & FILED IN OPEN COURT
ON 7-6-99
FHC
Carlos Juenke, Clerk
Docket U.S. District Court
Southern District of Florida*

ORDER ON INITIAL APPEARANCE

Language ___English___

Tape No. ___99-059___

AUSA ___Duty: Deb Stuart___

Agent _____

The above-named defendant having been arrested on ___7-3-99___, having appeared before the court for initial appearance on ___7-6-99___, and proceedings having been held in accordance with *F.R.C.P.* 5 or 40(a), it is thereupon

ORDERED as follows:

1. *Will try to here an atty.* appeared as permanent/temporary counsel of record.

   Address: _____

   Zip Code: _____ Telephone: _____

2. _____ appointed as permanent counsel of record.

   Address: _____

   Zip Code: _____ Telephone: _____

3. The defendant shall attempt to retain counsel and shall appear before the court at _____ on
   *IRC   7-8-99   10:00am   Miami* 19___

4. Arraignment/Preliminary/Removal/Identity hearing is set for *7-16-99 10:00am Miami* 19___

5. The defendant is held in temporary pretrial detention pursuant to 18 U.S.C. 3142(d) or (f) because _____

   _____

   A detention hearing, pursuant to 18 U.S.C. 3142(f), is set for *7-12-99 10:00am Miami* 19___

6. The defendant shall be released from custody upon the posting of the following type of appearance bond, pursuant to 18. U.S.C. 3142:

   _____

   _____

   This bond shall contain the standard conditions of bond printed in the bond form of this Court and, in addition, the defendant must comply with the special conditions checked below:

   ____ a. Surrender all passports and travel documents to the Pretrial Services Office of the Court.

   ____ b. Report to Pretrial Services as follows: _____ times a week by phone _____ times a week in person; other: _____

   ____ c. Submit to random urine testing by Pretrial Services for the use of non-physician-prescribed substances prohibited by law.

   ____ d. Maintain or actively seek full-time gainful employment.

   ____ e. Maintain or begin an educational program.

   ____ f. Avoid all contact with victims of or witnesses to the crimes charged.

   ____ g. Refrain from possessing a firearm, destructive device or other dangerous weapon.

   ____ h. Comply with the following curfew: _____

—1—

SD/F M-1
Rev.12/95

___ i. Comply with the following additional special conditions of this bond: _____
_____
_____

    This bond was set: At Arrest    _____

                     On Warrant    _____

                     After hearing _____

    If bond is changed from that set in another District, the reason pursuant to Rule 40(f) is _____
_____
_____.

___ If this space is checked, an evidentiary hearing pursuant to *United States v. Nebbia*, 357, F.2d 303 (2 Cir. 1966) shall be held prior to the posting of the bond. Such hearing shall be scheduled promptly upon notification to the court that the defendant is ready to post the bond.

7. The defendant has been advised by the court that if he or she is released on bond pursuant to the conditions set forth herein or those later ordered by the court, the defendant is subject to arrest and revocation of release and to various civil and criminal sanctions for any violation of those conditions. These various sanctions and penalties are set forth more fully in the Appearance Bond itself.

8. The defendant is committed to the custody of the United States Marshal until an appearance bond has been executed in accordance with this or subsequent court order.

    DONE AND ORDERED at <u>Ft. Lauderdale</u> this <u>6</u> day of <u>July</u>, 19<u>99</u>

_____
UNITED STATES MAGISTRATE JUDGE

DISTRIBUTION:
    WHITE to Court file
    BLUE to defendant
    GREEN to Assistant U.S. Attorney
    YELLOW to Counsel
    PINK to U.S. Marshal
    GOLD TO Pretrial Services

SD/FM-I
Rev.12/95

AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

SILED BY

CARLOS JUENEZ
CLERK U.S. DIST. CT.
S.D. OF FLA.—MIAMI

**SOUTHERN** ____ **DISTRICT OF** ____ **FLORIDA**

| UNITED STATES OF AMERICA | |
|---|---|
| V. | **CRIMINAL COMPLAINT** |
| KEITH GLADSTON WILLIAMSON and RENAULT VALENTINO TOMLINSON | **CASE NUMBER:** 99-3051-RLD |

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. From on or about December 1, 1998, to on or about July 2, 1999, in Miami, Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants did,

knowingly and intentionally combine, conspire, confederate, and agree, with each other and with others unknown to import into the United States, from a place outside thereof, a Schedule I controlled substance, that is, a mixture and substance containing a detectable amount of marijuana; and did knowingly and intentionally combine, conspire, confederate, and agree with each other and with persons unknown to possess with intent to distribute a Schedule I controlled substance, that is, a mixture and substance containing a detectable amount of marijuana; and did knowingly and intentionally possess with intent to distribute a Schedule I controlled substance, that is, a mixture and substance containing a detectable amount of marijuana;

in violation of Title 21, U.S.C. § 963, 846, and 841(a)(1).

I further state that I am a Special Agent, FBI, and that this complaint is based on the following facts:

### SEE ATTACHED AFFIDAVIT

_Signature of Complainant_
**Louis Mitchell, Special Agent, FBI**

Sworn to before me, and subscribed in my presence,

__July 4, 1999__ at __Miami, Florida__
Date                         City and State

__ROBERT L. DUBE__
**United States Magistrate Judge**
Name and Title of Judicial Officer                  Signature of Judicial Officer

## AFFIDAVIT

I, Louis Mitchell, being duly sworn, depose and state the following:

1.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed for approximately three (3) years. Prior to that I was a law enforcement officer in Kentucky for approximately five (5) years and I was a Military police Officer in the Air Force for approximately four (4) years. The information set forth in this affidavit is based upon information relayed to me by other law enforcement officers as well as upon my own observations during the course of the investigation.

2.      In early December, 1998, a Confidential Informant (CI) advised the FBI that an individual identified as KEITH GLADSTON WILLIAMSON was looking for transportation for a large amount of narcotics into the south Florida area. In November, 1998, the CI had several meetings with WILLIAMSON regarding the importation. On December 1, 1998, WILLIAMSON gave the CI $10,000 in cash to finance a boat which would be used to pickup the narcotics, which was supposed to be 300 kilograms of cocaine, off the coast of Colombia. On December 22, 1998, Upon arrival at the pickup point off the coast of Jamaica, the CI's boat was met by an associate of WILLIAMSON who advised that the delivery boat had mechanical problems so no delivery would take place.

3.      On January 6, 1999, WILLIAMSON provided an additional $10,000 in cash to the CI to finance a second trip to pick up the narcotics. However, due to boat problems the pickup was not completed in January.

4.      Over the next several months negotiations between the CI and WILLIAMSON continued. In April, 1999, WILLIAMSON advised the CI that he had approximately 6,000 pounds of marijuana which he wanted the CI to pick up off the coast of Jamaica. WILLIAMSON and the CI had numerous discussions over the next several weeks regarding this load and how it should be packaged for the anticipated boat-to-boat transfer.

5.      On or about May 26, 1999, the CI met WILLIAMSON at a restaurant in Hialeah, Florida. WILLIAMSON advised the CI that he had come to Miami from Jamaica on a separate deal and advised the CI that he had just made a separate $200,000 payment on a cocaine transaction but that the money had been seized. WILLIAMSON advised the CI that the marijuana was almost ready and told the CI that he would pay $80 per pound for the transportation. However, WILLIAMSON advised the CI that there would only be 3,000 pounds of marijuana.

6.      On or about June 12, 1999, WILLIAMSON called the CI from Jamaica and told him that the marijuana was ready for the boat-to-boat transfer. WILLIAMSON and the CI agreed that the transfer would take place within the next two weeks off the coast of Jamaica.

7.      On June 23, 1999, WILLIAMSON called the CI, who was on an undercover vessel, and told him that he would be at the rendezvous point the following morning.

8.      On June 24, 1999, WILLIAMSON and two unidentified males who were in his boat rendezvoused with the CI's boat off the coast of Jamaica. Also onboard the vessel was an undercover FBI agent (UCA). WILLIAMSON transferred approximately 1300 pounds of marijuana and 14 pound of hashish oil to the undercover vessel. The marijuana arrived in the United States on or about June 30, 1999.

9.      On July 1, 1999, at restaurant in Miami, the CI met with WILLIAMSON to discuss the details of the transfer of marijuana. WILLIAMSON advised the CI that he would pick up the truck in the of the following day. WILLIAMSON told the CI that he would meet with the CI but that he would have a driver for the truck which actually had the marijuana.

10.     On July 2, 1999, WILLIAMSON and RENAULT VALENTINO TOMLINSON met with the CI and an undercover agent (UCA). The CI attempted to show WILLIAMSON and TOMLINSON the marijuana which was in the back of a rented Ryder truck, however, they told the CI that they did not need to see it. However, WILLIAMSON and TOMLINSON did not want to take the truck because they were concerned that the rental papers were not in the truck. WILLIAMSON then told the CI to take the truck to a nearby shopping center while the UCA retrieved the rental documents.

11.     On July 2, 1999, the UCA returned to the shopping center where the CI had moved the truck and met with WILLIAMSON and TOMLINSON. After the UCA gave them the rental documents, WILLIAMSON and TOMLINSON accepted the keys to the truck. WILLIAMSON told the CI and UCA that they were just going to wait for a while and watch the truck to make sure it had not been followed and that it was safe. WILLIAMSON and TOMLINSON were subsequently observed by surveillance agents surveying the area of the parking lot around the Ryder truck.

12.     On July 2, 1999, approximately 15 minutes after the UCA and CI departed, TOMLINSON drove the Ryder truck away. WILLIAMSON followed approximately one mile behind the truck. The truck was subsequently stopped by law enforcement officers and TOMLINSON was arrested. After seeing the police cars around the truck, WILLIAMSON attempted to leave the area but was arrested after he took a circuitous route through a shopping center.

2

13.      On July 2, 1999, following his arrest, TOMLINSON was given his <u>Miranda</u> warnings after which he spoke to the arresting agents. TOMLINSON admitted that he knew that there were drugs in the truck.

FURTHER SAYETH AFFIANT NOT.

Louis Mitchell
Special Agent, FBI

Sworn and Subscribed
before me this _____ day
of July, 1999.

ROBERT L. DUBE
UNITED STATES MAGISTRATE JUDGE

3

COURT MINUTES

U.S. MAGISTRATE JUDGE BARRY S. SELTZER — FORT LAUDERDALE

DEFT: Renault Tomlinson  (J)#          CASE NO: 99-3051-Dube

AUSA: _Debi Stuart for_          ATTNY: _____

AGENT: _Mike Mullaney_  VIOL: _____

PROCEEDING: __Initial Appearance__   BOND REC: _PTD_

BOND HEARING HELD - yes/no     COUNSEL APPOINTED: _____

_____ BOND SET @ _____

CO-SIGNATURES: _____

SPECIAL CONDITIONS: _____

1) Do not violate any law.

2) Appear in court as directed.

3) Surrender and/or do not obtain passports/ travel documents.

4) Rpt to PTS as directed /or _____ X's a week/month by phone; _____ X's a week/month in person.

5) Random urine testing by Pretrial Services. _____ treatment as deemed necessary.

6) Maintain or seek full-time employment.

7) Maintain or begin an educational program.

8) No contact with victims/witnesses.

9) No firearms.

10) Curfew: _____

11) Travel extended to: _____

(2) _____ Halfway House

_____ Electronic Monitoring

_D—advised of charge_
_Will retain counsel._

| NEXT COURT APPEARANCE: | DATE: | TIME: | JUDGE: |
|---|---|---|---|
| INQUIRY RE COUNSEL: | 7-8-99 | 10:00am | Duty/Miami |
| PTD BOND HEARING: | 7-12-99 | 10:00am | Duty/Miami |
| PRELIM/ARRAIGN. OR REMOVAL: | 7-16-99 | 10:00am | Duty/Miami |

STATUS CONFERENCE:

DATE: 7-6-99          TIME: 11:00am          TAPE # 99- 059  PG #

COURT MINUTES

U.S. MAGISTRATE JUDGE BARRY S. SELTZER - FORT LAUDERDALE

DEFT: Keith Williamson                    CASE NO:   99-3051-~~BSS~~ *Duke*

AUSA: *Deb Stuart for*                     ATTNY:

AGENT: *Mike Mullaney*                     VIOL:

PROCEEDING:   Initial Appearance          BOND REC:   *PTD*

BOND HEARING HELD - yes/no                 COUNSEL APPOINTED:

_____ BOND SET @ _____

CO-SIGNATURES: _____

SPECIAL CONDITIONS: _____

1) Do not violate any law.

2) Appear in court as directed.

3) Surrender and/or do not obtain passports/ travel documents.

4) Rpt to PTS as directed /or _____ X's a week/month by phone; _____ X's a week/month in person.

5) Random urine testing by Pretrial Services. Treatment as deemed necessary.

6) Maintain or seek full-time employment.

7) Maintain or begin an educational program.

8) No contact with victims/witnesses.

9) No firearms.

10) Curfew: _____

11) Travel extended to: _____

12) _____ Halfway House
    _____ Electronic Monitoring

*△—Advised of charge*
*Will retain an atty.*

| | DATE: | TIME: | JUDGE: |
|---|---|---|---|
| NEXT COURT APPEARANCE: | | | |
| INQUIRY RE COUNSEL: | 7-8-99 | 10:00am | Miami/Duty |
| PTD BOND HEARING: | 7-12-99 | 10:00am | Miami/Duty |
| PRELIM/ARRAIGN. or REMOVAL: | 7-16-99 | 11:00am | Miami/Duty |
| STATUS CONFERENCE: | | | |

DATE:   7-6-99          TIME:   11:00am     TAPE #   99- *059*   PG #   *7*

JUL-05-1999  22:50                                                    99- 3051-Dube
P.05

*Southern District of Florida*

UNITED STATES OF AMERICA          Case Number              3225650
              Plaintiff          REPORT COMMENCING CRIMINAL
                                          ACTION

              -vs-

TOMLINSON       RENAULT
                    Defendant       USMS NUMBER    06453.041

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

TO:   Clerk's Office   FT. LAUDERDALE

                                          FILED by          D.C.
••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

All items are to be completed.  Information not applicable or unknown will be indicated "N/A"  JUL 6 - 1999

(1)  Date and Time of Arrest.     07/02/99          12:10P

(2)  Language Spoken:             ENGLISH

(3)  Offense(s) Charged:          IMP/TRAF MARIJUANA

(4)  U.S. Citizen  [  ] Yes    [ X ] No    [  ] Unknown

(5)  Date of Birth:   08/21/51

(6)  Type of Charging Document:  (check one)

    [  ]  Indictment        [ X ]  Complaint to be filed/ already filed

         Case #

    [  ]  Bench Warrant for Failure to Appear

    [  ]  Probation Violation Warrant

    [  ]  Parole Violation Warrant

    Originating District:   SDF

    COPY OF WARRANT LEFT WITH BOOKING OFFICER  [  ] YES    [  ] NO

Amount of Bond.

Who set Bond:      N/A

(7)  Remarks:       N/A

(8)  Date:  07/02/99        (9)  Arresting Officer:   WILLIE KNIGHT

(10)  Agency:  FBI              (11)  Phone:   944-9101

(12)  Comments:   N/A

TOTAL P.08

99-3051-
Dube

UNITED STATES DISTRICT COURT
*Southern District of Florida*

UNITED STATES OF AMERICA                 Case Number                 3225650
                        Plaintiff              REPORT COMMENCING CRIMINAL
                                                            ACTION

                        -vs-

WILLIAMSON          KEITH
                              Defendent           USMS NUMBER   59597 004

..........................................................................................................................

TO:   Clerk's Office    FT. LAUDERDALE

..........................................................................................................

FILED by _____ D.C.

JUL 0 - 1999

All items are to be completed. Information not applicable or unknown will be indicated "N/A".

(1)   Date and Time of Arrest:      07/02/99            11:35

(2)   Language Spoken:              N/A

(3)   Offense(s) Charged:           IMP/TRAFF MARIJUANA

(4)   U.S. Citizen   [ X ] Yes      [   ] No      [   ] Unknown

(5)   Date of Birth   02/11/42

(6)   Type of Charging Document:  (check one)

      [   ] Indictment       [ X ] Complaint to be filed/ already filed

            Case #

      [   ] Bench Warrant for Failure to Appear

      [   ] Probation Violation Warrant

      [   ] Parole Violation Warrant

      Originating District:   N/A

      COPY OF WARRANT LEFT WITH BOOKING OFFICER  [   ] YES   [   ] NO

Amount of Bond:

Who set Bond:         N/A

(7)   Remarks:        N/A

(8)   Date:   07/02/99         (9)   Arresting Officer:   WILLIE KNIGHT

(10)  Agency:   N/A

                              (11)  Phone:   N/A

(12)  Comments:   N/A

80 'd